**UNITED STATES of America**

v.

**John Ceaphus YOUNG.**

**Crim. No. 75–738.**

United States District Court, E. D. Pennsylvania.

May 6, 1976.

Robert E. J. Curran, U. S. Atty., Gilbert J. Scutti, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Edward G. Rendell, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

Defendant Young was charged in a six-count indictment with murder and robbery within the special territorial jurisdiction of the United States, and with bank robbery. After a jury trial, Young was found guilty of first degree murder, as well as of all the other crimes alleged in the indictment. Young has moved for a new trial on the

ground that the Court erred in its refusal to strike the entire panel of venire persons.[1] For the reasons set forth below, we do not find this argument to be persuasive.

The jury panel in this case consisted of forty venire persons. During the course of *voir dire,* the Court asked the members of the panel numerous questions, including whether they or any members of their families had ever been the victim of a crime. Twenty-one panel members responded in the affirmative. Fourteen members stated that they had been the victim of a crime, seven of whom had been victimized more than once. The total number of incidents numbered twenty-six. Concerning members of their families, thirteen panel members, including six of the fourteen members who had themselves been victims of a crime, stated that they had relatives who had been victims of a crime, two of whom had been victimized more than once. The total number of incidents numbered seventeen. Young contends that, because each one of these incidents was disclosed in the presence of the entire panel,[2] a highly prejudicial impression was created that crime is even more widespread than statistics suggest. Thus, Young concludes, the entire panel was so "polluted" that it should have been stricken.

We reject Young's contention for several reasons, the most important of which is that his counsel did not initially request individual *voir dire,* nor did he request it at any time during the group *voir dire.* The failure to so request requires a denial of the motion for new trial. Assuming, however, that it was impossible for counsel to see the allegedly prejudicial clouds forming, we do not think that the

---

1. Young also asserts that a new trial must be granted on the ground that certain out-of-court identifications by eyewitnesses should have been suppressed. Immediately prior to trial, the Court held a suppression hearing which lasted three days. At the end of the hearing, we granted Young's motion to suppress statements which he made to an agent of the Federal Bureau of Investigation, but refused to grant his motion to suppress the identifications.

[*See* N.T. 335–336.] The Court has examined the suppression hearing testimony and reexamined the relevant authorities concerning this issue. We are drawn to the conclusion that the motion to suppress the identifications was properly denied.

2. Two of the forty-three incidents were related out of the panel's hearing at side bar.

answers given created a situation that was so fundamentally unfair as to constitute a denial of due process of law. Nor do we believe that the situation constituted a denial of Young's right to trial by an impartial jury as guaranteed by the Sixth Amendment.

An examination of the relevant portions of the *voir dire* transcript shows that, of the forty-one incidents testified to in the presence of the panel, there were four wallet or purse thefts, thirteen apartment or house burglaries, seven automobile thefts, twelve automobile property thefts, three muggings and two robberies, none of which involved the use of firearms.[3] Taking into account that the responses covered a wide variety of individuals, including both panel members and members of their families, which the Court defined as brothers, sisters, children, grandchildren, parents, grandparents and unrelated persons living in their households,[4] and that the incidents occurred as far back as twenty-two years ago, the total number of incidents does not appear to be inordinately high. More importantly, almost 90% of the incidents were not crimes of violence as in the instant case, but were crimes involving the taking of property. For the most part, only insubstantial amounts of property were involved. Finally, the Court specifically asked the jury panel whether, despite the fact that either they or their relatives had been victims of a crime, they could render a fair and just verdict based solely on the evidence, and only after having heard all the evidence, the summations of counsel and the instructions of the Court.[5] No one responded negatively.

In light of all the above, we cannot say that, as a result of hearing the incidents, the requisite impartiality of the panel members was destroyed. Accordingly, the motion for new trial will be denied.

---

**3.** In fact, there was only one time that the use of a firearm was mentioned, and that was in connection with one of the robberies wherein the victim used his own revolver to defend himself.